UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

HOMEVESTORS OF AMERICA, INC.,

    Plaintiff,

v.                                      Case No:  6:18-cv-893-Orl-18TBS

DAVID BECKER,

    Defendant.

## REPORT AND RECOMMENDATION

Pending before the Court is Plaintiff's Motion for Entry of Default Judgment (Doc. 12). Upon due consideration, I respectfully recommend that the motion be **GRANTED**.

### Background

On June 8, 2018, Plaintiff HomeVestors of America, Inc. filed its complaint against Defendant David Becker, doing business as DaveBuysUglyHouses.com, alleging claims for trademark infringement under 15 U.S.C. § 1114(1)(a) (Count I) and false designation of origin and unfair competition under 15 U.S.C. § 1125(a)(1)(a) (Count II), all relating to Defendant's use of the name "DaveBuysUglyHouses" to promote his real estate services (Doc. 1). Defendant was served with the summons and complaint (Doc. 8) and failed to answer or otherwise respond. As Defendant failed to appear, a clerk's default was entered (Doc. 10). The instant motion followed and was referred to me.

### Discussion

#### Legal Standard

A district court may enter a default judgment against a properly served defendant who fails to defend or otherwise appear pursuant to Federal Rule of Civil Procedure

55(b)(2). In defaulting, a defendant "admit[s] the plaintiff's well-pleaded allegations of fact" for purposes of liability. Buchanan v. Bowman, 820 F.2d 359, 361 (11th Cir.1987). Nonetheless, a court may enter a default judgment only if the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for entry of a default judgment. Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law. In short, despite occasional statements to the contrary, a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover").

The United States Supreme Court has noted the difference between well-pleaded facts and conclusory allegations. In Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court explained that a complaint need not contain detailed factual allegations, but it demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. at 678 (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the plaintiff is entitled to relief.'" Id. at 679 (quoting FED. R. CIV. P. 8(a)(2)). This analysis is equally applicable to a motion for default judgment. See De Lotta v. Dezenzo's Italian Restaurant, Inc., No. 6:08-cv-2033-Orl-22KRS, 2009 WL 4349806, *5 (M.D. Fla. November 24, 2009).

Once liability is established, the Court turns to the terms of the judgment. Pursuant to Federal Rule of Civil Procedure 54(c), "[a] default judgment must not differ in kind from,

or exceed in amount, what is demanded in the pleadings." If unspecified monetary damages are sought, the party moving for default judgment has the burden to prove the unliquidated sums in a hearing on damages or otherwise. FED. R. CIV. P. 55(b)(1)-(2). Pursuant to Rule 55(b)(2), the Court "may conduct hearings or make referrals-preserving any federal statutory right to a jury trial-when, to enter or effectuate judgment, it needs to: A) conduct an accounting; B) determine the amount of damages; C) establish the truth of any allegation by evidence; or D) investigate any other matter." Thus, in order to enter a default judgment, the Court must find that an adequate showing has been made as to liability and the kind or amount of damages or other relief.

### The Allegations of the Complaint

HomeVestors is a privately-owned real estate franchise company that sells franchises to investors who buy homes in need of repair, or homes that owners need to sell quickly (Doc. 1, ¶ 8). Franchisees typically renovate the houses they purchase and then sell or rent them to others. HomeVestors is well known for its slogan, "We Buy Ugly Houses," which was granted service mark registration by the United States Patent and Trademark Office ("USPTO") in September 2003 (Id., ¶ 9). HomeVestors is the owner of more than thirty other federally registered service marks, including many that include the term "ugly houses" ("the marks") (Id., ¶ 12).

Defendant is not a licensed franchisee of HomeVestors, does not have any other affiliation with HomeVestors, and is not entitled to use any of the UGLY HOUSES marks to promote its real estate services (Id., ¶ 17). Defendant, a direct competitor of HomeVestors, operates the website http://www.davebuysuglyhouses.com/, a domain which contains the phrase "dave buys ugly houses" in every URL extension associated with the website. "On information and belief," Defendant advertises "Dave Buys Ugly

Houses" on social media websites (Id., ¶¶ 18, 19). HomeVestors alleges that Defendant's use of the slogan "Dave Buys Ugly Houses" (or other marks that are confusingly similar to HomeVestors' marks) on Defendant's website URL's and on social media pages deceives consumers into believing that Defendant is affiliated with HomeVestors. It claims that Defendant's intent to confuse consumers harms HomeVestor' reputation, misappropriates business opportunities and profits intended for HomeVestors and its franchisees, and drives up advertising costs for HomeVestors (Id., ¶ 20).

HomeVestors sent Defendant cease and desist letters on June 23, 2017 and August 30, 2017, which Defendant ignored (Id., ¶¶ 21, 22). From this, HomeVestors concludes that Defendant has willfully and intentionally infringed upon HomeVestors' marks. It pleads for injunctive relief, as well as damages and attorneys' fees.

Liability

The Lanham Act prohibits the unauthorized use of a registered trademark in connection with "the sale, offering for sale, distribution, or advertising of any goods or services." 15 U.S.C. § 1114(1)(a). Trademarks are protected by federal law against infringement by use of identical (counterfeit) or colorable imitations of the mark which are "likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). Thus, under the Lanham Act, "a defendant is liable for trademark infringement if, without consent, he uses 'in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark' that 'is likely to cause confusion, or to cause mistake, or to deceive.'" Florida Int'l Univ. Bd. of Trustees v. Florida Nat'l Univ., Inc., 830 F.3d 1242, 1255 (11th Cir. 2016). To establish a claim of trademark infringement, Plaintiff must show that: (1) it possesses a valid mark; (2) that Defendant used the mark; (3) that Defendant's use of the mark occurred in "commerce"; (4) that Defendant used the mark in connection with the

sale or advertising of any goods or services; and (5) that Defendant used the mark in a manner likely to confuse consumers. See N. Am. Med. Corp. v. Axiom Worldwide, Inc., 522 F.3d 1211, 1218 (11th Cir. 2008). The Eleventh Circuit has developed a seven-factor test for determining whether there is a likelihood of confusion: (1) the strength of the plaintiffs mark; (2) the similarity between the plaintiffs mark and the infringing mark; (3) the similarity between the products or services offered by the plaintiff and defendant; (4) the similarity of the sales methods; (5) the similarity of the advertising methods; (6) the defendant's intent; and (7) whether actual confusion has occurred. Alliance Metals, Inc. of Atlanta v. Hinely Industries, Inc., 222 F.3d 895 (11th Cir. 2000).

Consideration of these factors in view of the uncontested factual allegations, which the Court accepts as admitted due to the default, leads to the conclusion that Defendant violated the Lanham Act in his use of identical or colorable imitations of HomeVestors' marks. Accordingly, I find HomeVestors has established that Defendant is liable for his unauthorized use and infringement of the marks.

Injunction

HomeVestors advises that it seeks only injunctive relief and does not seek an award of money damages, attorney's fees or costs (Doc. 12 at 2). The Lanham Act permits the issuance of permanent injunctions to prevent future violations. 15 U.S.C. § 1116. Courts have the authority to grant permanent injunctions under the Act, provided that the plaintiff demonstrates that (1) it has suffered an irreparable injury; (2) the remedies available at law are inadequate to compensate for the injury; (3) a remedy in equity is warranted, considering the balance of hardships between the plaintiff and defendant; and (4) the public interest would not be disserved by a permanent injunction. Angel Flight of Ga., Inc. v. Angel Flight Am., Inc., 522 F.3d 1200, 1208 (11th Cir. 2008).

Irreparable injury has been determined to include "loss of control of reputation, loss of trade, and loss of goodwill." Ferrellgas Partners, L.P. v. Barrow, 143 F. App'x 180, 190 (11th Cir. 2005) (quoting Pappan Enters., Inc. v. Hardee's Food Sys., Inc., 143 F.3d 800, 805 (3d Cir. 1998)).

HomeVestors has suffered irreparable injury in the loss of control regarding the use of its marks by Defendant. The attachments to the complaint show that Defendant is using the marks to solicit the same customers as HomeVestors (those with ugly houses to sell), and Defendant's use of the marks is likely to deprive HomeVestors and its franchisees of customers. Given Defendant's disregard of the cease and desist letters and continued display of the infringing marks after the filing of the complaint, I credit HomeVestors' contention that it has every reason to believe Defendant will continue with his ongoing infringement unless enjoined. For this reason, money damages are inadequate to compensate for HomeVestors' injury. Moreover, the public interest will not be disserved by the entry of the requested permanent injunction. The injunction will protect trademarks that enable the public to make informed decisions. Further, the lack of cooperation in this suit strongly supports the need for an injunction. See Jackson v. Sturkie, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief.").

HomeVestors seeks entry of a permanent injunction "to enjoin Defendant and each of his respective partners, officers, directors, associates, agents, servants, employees, attorneys, successors and assigns, and all other persons acting in active concert or participation with him from:

i. Using HomeVestors' name-mark, variations on the HomeVestors'

name-mark and colorable imitations of any of HomeVestors' other registered marks as described in paragraph 12 of the Complaint;

ii. Using metatags, source codes, or URLs with any variation of the name-mark "HOMEVESTORS" or any variation of HomeVestors' other registered marks as described in paragraph 12 of the Complaint;

iii. Doing any other act or thing likely to confuse, mislead, or deceive others into believing that Defendant, or its services and/or products, are connected with, sponsored by or approved by HomeVestors."

HomeVestors also seeks an order requiring Defendant to "immediately and permanently remove any of the HomeVestors marks depicted in paragraph 12 of the Complaint, or any colorable imitations thereof, from Defendant's website(s), from Defendant's print advertisements, and anywhere else in connection with Defendant's business." (Doc. 12 at 2). This relief does not differ in any significant way from the broad relief sought in the complaint, and I find entry of such an injunction to be reasonable and warranted here.

Now, pursuant to 15 U.S.C. § 1116, it is recommended that this Court permanently enjoin Defendant from continuing to infringe any of HomeVestors' marks. The language suggested by HomeVestors is acceptable for this purpose, but HomeVestors is **directed** to tender a proposed Final Default Judgment and Permanent Injunction for the Court to review.

### Recommendation

Upon consideration of the foregoing, I respectfully recommend that:

(1) The motion be **GRANTED**;

(2) The Court enter a default judgment in favor of HomeVestors and against Defendant, which should include a permanent injunction, consistent with the language set forth above; and

(3) Once entered, the Clerk should be directed to terminate all pending matters and close the case.

## Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  See 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on December 11, 2018.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

Presiding United States District Judge
Counsel of Record
Unrepresented Parties